(No. 5941—

RAUL V. VERGIL, Claimant, *vs.* STATE OF ILLINOIS, MEDICAL CENTER COMMISSION, Respondent.

*Opinion filed January 14, 1975.*

GARY A. TOPPER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, and WILLIAM F. SCANNELL, Special Assistant Attorney General, for Respondent.

PERLIN, C. J.

This is an action to recover for personal injuries suffered by claimant in a State-owned building on October 5, 1969, when he fell down a flight of stairs after tripping on worn carpeting.

On October 5, 1969, claimant, then twenty-five years old, lived with his mother and father in the second floor apartment of a two-story building located at 744 South Leavitt Street, Chicago, Illinois. Respondent has stipulated that it was the owner of the building at the time in question.

The building contained three apartments. Two steps down from ground level, was a basement apartment. An exterior stairway led from ground level to the door to the first floor landing. Inside the first floor landing, there was a door to the first floor apartment, and a second door which opened to a flight of stairs leading to the second floor landing where claimant's apartment was located.

There was no door separating claimant's apartment from the second floor landing. The door at the foot of the stairs leading to the second floor landing was thus, the only door barring entrance to claimant's apartment from the first floor landing. Claimant described the door at the

foot of the stairway, as the door to his family's apartment.

The stairs from the first floor landing to claimant's apartment were not used by any other tenants in the building and were used exclusively to enter and leave claimant's apartment. Claimant testified that his family kept the stairs clean and said that he personally swept the stairs from time to time when they became dirty.

The upper three stairs of the stairway to claimant's apartment were carpeted, and photographs of the stairway introduced into evidence show that the carpeting was extremely worn, torn, and frayed. Claimant testified that the carpeting had been in place when his family moved into the apartment in 1965. When asked how long the carpeting had been torn, claimant is quoted in the transcript to have said, "Since, March, January, it got bigger little by little."

At about 2:00 p.m. on October 5, 1969, as claimant descended the stairway from his apartment, his shoe caught on the frayed carpeting and claimant was thrown down the entire flight of stairs. Claimant suffered fractures of his left clavicular bone and the distal end of his left radius in the fall. He was taken to the University of Illinois Medical Center Emergency Room, where he was X-rayed and a shoulder and arm cast was applied. Claimant spent $348 for medical expenses as a result of the accident and lost approximately one month from work.

Claimant testified that it had been his custom personally to pay the monthly rent on the apartment at the Illinois Medical Center at Ashland and Polk Avenues, Chicago, Illinois. He said that on several occasions while paying the rent, he complained about the condition of the

rug and stairs to a woman known to him only as "Dorothy." He said that when he last complained in March or April, 1969, "Dorothy" told him that "we're going to take care of it."

Respondent introduced into evidence, a lease purportedly signed by claimant's father in 1965. The lease provided, in pertinent part:

"Applicant has examined the premises aforesaid, knows the condition thereof, and is agreeable to accept the same in their present condition. Applicant agrees to do all repairing, decorating and heating of said premises at his own expense; and applicant further agrees that Medical Center Commission, its successors or assigns shall not be liable for any damage or injury occasioned by failure to keep said premises in repair."

Claimant's father, who can neither speak nor read English, testified through an interpreter that he had never seen the purported lease, and that the signature thereon was not his own. He also said that nobody had ever explained to him his rights and responsibilities with respect to the premises.

Claimant contends that respondent owed him a duty to keep the stairway leading to his apartment in a reasonably safe condition; that respondent had actual notice of the dangerous condition of the stairway; and that respondent breached its duty to him by failing to repair the worn and frayed carpet. It is respondent's position that the stairway to claimant's apartment was not a common area of the building, but rather was demised to claimant's family along with the apartment proper, and that therefore, respondent did not owe claimant a duty to maintain the stairway. Additionally, respondent asserts that claimant's own negligence contributed to the injury, in that he was aware of the condition of the carpet. Finally, respondent argues that the lease purportedly signed by claimant's father ab-

solves respondent from responsibility for failure to maintain the stairway.

We first consider respondent's contention that the stairway in question was not a common area of the building, and that it, therefore, was not under a duty to maintain the stairway. Generally, a landlord has a duty to maintain in reasonable repair only those portions of his building over which he maintains control. *Manns* v. *Stein*, 91 Ill.App. 2d 398, 241 N.E.2d 691, 693; *Murphy* v. *Illinois State Trust Co.*, 375 Ill. 310, 31 N.E.2d 305. In *Gula* v. *Gawel*, 71 Ill.App.2d 174, 218 N.E.2d 42, at 45, the court listed the following factors to be considered in determining whether a stairway is under the control of the landlord or a tenant:

"Where a stairway leads, the use to which it is put and by whom, are factors to be considered by the trier of fact along with the intention of the parties, the terms of the lease, the responsibility for repairs, maintenance and illumination and all other factors which tend to show control in either the landlord or the tenant."

Claimant argues that it was the intention of both parties to the lease that the stairway be under the management and control of the landlord. Claimant points to the fact that claimant had complained about the condition of the carpeting to an agent of respondent, who allegedly indicated that respondent would remedy the situation.

However, the stairway down which claimant fell, led only to his apartment, and was used exclusively by those entering and leaving the apartment. No other tenant in the building utilized the stairway. Further, the stairway was inside the only door to claimant's apartment and claimant and his family habitually cleaned the stairway. Under all the circumstances, we conclude that the stairway was a part of the demised premises, and not a common area of the building.

A landlord is not liable for injuries to a tenant caused by a defect in the demised premises where the defect is of such a nature that the lessee can or does discover it, unless the landlord fraudulently conceals the fact. *Roseman v. Wilde*, 106 Ill.App.2d 93, 245 N.E.2d 644. Here, the defect was in a portion of the demised premises, and not only did the landlord not conceal the defect, but claimant had actual knowledge of the condition of the carpeting.

Additionally, even if we were to conclude that the stairway was not demised under the lease, claimant would still be barred from recovering for his injuries on grounds of contributory negligence. As we have often stated, the burden of proof rests upon a claimant to show freedom from contributory negligence, and, where he fails to meet that burden, his claim will be denied. *Howell* v. *State*, 23 C.C.R. 141, at 145. Claimant was well aware of the condition of the carpeting, having complained to respondent's representative on several occasions months before the incident. A party has no right knowingly to expose himself to danger, and then to recover damages for an injury which he might have avoided by the exercise of ordinary care. *Vanda* v. *State*, 25 C.C.R. 213, at 218. We find that claimant was not in the exercise of ordinary care for his own safety at the time of the accident, and that his own negligence was a contributing factor in his injury.

This claim is accordingly denied.